Jasen, J. (dissenting).
I agree with Judge Cooke that the wage increase awarded to New York City police officers by the impasse panel is encompassed by the terms of the wage freeze legislation. To his discussion, I would add but one observation. It is undisputed that had the city agreed to the wage increase voluntarily the wage freeze statute would apply. I fail to see how the city’s position is undermined, and the statute rendered inapplicable, because the city exhausted every available procedural and judicial avenue in an effort to resist the payment of a wage increase. The net result of the collective bargaining procedures and the litigation commenced to en *210 force the impasse panel’s award is to require the city, in a collective bargaining agreement and setting, to pay wage increases to one class of its employees. This is exactly what the statute was designed to freeze.
I also agree with Judge Cooke, although on more narrow grounds, that there is no constitutional impediment to the enforcement of wage freeze legislation. To be sure, a collective bargaining agreement is a contract. Although the Federal Constitution prohibits the States from impairing contractual obligations (US Const, art I, § 10), the constitutional prohibition has never been read literally. (See Home Bldg. & Loan Assn, v Blaisdell, 290 US 398, 429.) The cases establish, all too conclusively, that the language of the Constitution does not mean exactly what it says. The cases also establish, again conclusively, that the impairment clause has been interpreted variously, and sometimes inconsistently, by different courts, both institutionally and compositionally, confronted with factual settings. The diffused lines of authority result not from any institutional or judicial failure to adequately articulate often close reasoning. The difficulty results from the fact that, once the literal approach is rejected, the clause becomes amorphous. Its scope cannot be shaped from its sparse language. Shape is given by judicial holdings, rather than by abstract and abstracted judicial language.
It suffices in this case to state that the impairment clause and the impairment cases never stripped from the States the power to regulate the terms and conditions of work for municipal employees. Whether couched in terms of emergency power or public policy, a State certainly has warrant to adjust the terms of public employment in order to cope with exigent circumstances. The intimate relation between government and its employees permits flexibility of a kind that is absent from agreements between private parties. More dramatically, the same elasticity is missing from the relationship existing between government and its creditors. (Cf. Flushing Nat. Bank v Municipal Assistance Corp. for City of N. Y., 40 NY2d 731.) Flexibility does not, of course, mean that public employers can abrogate contracts with employees at will. Municipal employees are public servants; but they are not public serfs. The State and its subdivisions are not feudal landlords who may move employees around or adjust their compensation by whim or caprice. However, the State’s exercise of its residual power *211 over municipal employees is, in this case, far from whimsical and far from capricious.
The City of New York, it is hardly necessary to state, is confronted by a grave financial emergency. Much of the debt with which the city is confronted is constitutional debt—debt which the city must, by Constitution, pay. Obviously, payment requires the city to make budgetary adjustments. Since expenses relating to personnel constitute a significant and quite sizeable budgetary allotment, obviously, too, personnel expenses are candidates for reduction. Here, too, the city is faced with fixed and vested pension payments that are constitutionally unassailable. (NY Const, art V, § 7.) Instead, it is again apparent that future benefit increases are a prime target for the budgetary axe. It is significant, in this connection, that the State has made substantial contributions necessary to sustain governmental operations of the city. It is not unreasonable for the Legislature to demand, as a condition, for State assistance, that the city does not increase its expenses at a time when all State taxpayers are contributing the moneys necessary to avert local fiscal collapse. Although the city cannot deflect responsibility, it is not without significance that the wage freeze has been ordered by the State. It is also not without significance that the city had been resisting wage increases and, but for the collective bargaining procedures provided by the Legislature, such increases would never have been. Moreover, the increases have not been abrogated but "suspended”. The city’s faith, in this instance, has been good; there is no direct constitutional provision prohibiting wage freezes nor can such prohibition be drawn by reasonable implication. The measures taken by the State have been appropriate to the circumstances. Hence, I conclude that the wage freeze statute is constitutional.
For these reasons, I would reverse the order of the Appellate Division.